Jamal YANAKI and Susan
I. Moss, Plaintiffs,

v.

IOMED, INC., Robert J. Lollini, Mary Crowther, Laura Millar, Parr Waddoups Brown Gee & Loveless, Clark Waddoups, Jonathan O. Hafen, Justin P. Matkin, Office Equipment Associates, Scott L. Johnson And John Does I Through XX, Defendants.

Nos. 2:03–CV–0345, 2:03–CV–0346.

United States District Court,
D. Utah,
Central Division.

March 11, 2004.

David W. Scofield, Ronald F. Price, Peters Scofield Price, Salt Lake City, UT, for plaintiffs.

Michael L. Larsen, David M. Bennion, Lara A. Reymann, Parsons, Behle & Latimer, Salt Lake City, UT, for defendants.

## AMENDED OPINION AND ORDER

BENSON, District Judge.

Before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Having considered the parties' briefs, arguments and the relevant law, the Court issues the following Order.

## FACTUAL BACKGROUND

This case has its origins in a dispute between Plaintiff Yanaki and Defendant Iomed, Inc. concerning Yanaki's alleged appropriation of confidential Iomed business information around the time he terminated his employment with Iomed, and the extent of Yanaki's compliance with the non-competition agreement that was part of his employment contract with Iomed. On April 9, 2002, Iomed filed a complaint in the Third District Court, Salt Lake County, State of Utah, against Yanaki and several other defendants, alleging a variety of harms, including misappropriation of

trade secrets (Iomed Complaint ¶ 52 *et seq.*), and violation of the non-competition term of his employment agreement. (Iomed Complaint ¶ 103 *et seq.*) The case was assigned to the Honorable Tyrone E. Medley.

On April 10, 2002, the day after the complaint was filed in the Third District Court, Iomed's laywers Clark Waddoups, Jonathan Hafen, and Justin Matkin, of defendant law firm Parr, Waddoups, Brown, Gee & Loveless, filed an Ex Parte Motion for Order to Conduct Immediate Discovery to Prevent the Destruction or Alteration of Evidence ("Search Order").[1] (Yanaki Complaint ¶ 8.) On April 12, 2002, Waddoups and Hafen appeared before Judge Medley, who granted their ex parte motion for the Search Order.[2] (Yanaki Complaint

1. The Motion was supported by affidavits given by Defendants Laura Millar, an Iomed executive assistant, and Robert J. Lollini, Iomed's Chief Financial Officer and Chief Operating Officer. (Memo. ISO Motion ¶ 3.) Plaintiff alleges that the affidavits are perjurious. (Yanaki Complaint ¶ 42 *et seq.*)

2. The Search Order does not identify the statutory authority on which it is based. Iomed's Memorandum in Support of its Motion, however, identifies three statutory bases it suggests authorize the granting of such an order in a civil suit. Iomed argues that Rule 34 of the Utah Rules of Civil Procedure gives the Court authority to issue an order for the production of documents, and for entry upon land in pursuit of documentary production as well. (Memo. ISO Motion at 10.) The pertinent portions of Rule 34 provide that

> Any party may serve on another party a request ... (1) to produce and permit the party making the request, or someone acting on his behalf, to inspect and copy, any designated documents ... within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served; or (2) to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b).

Utah R.Civ.P. 34(a). Iomed also invokes the court's general power to control its own processes in the interests of justice, a power codified in Utah Code Ann. § 78-7-5 and the Utah Constitution Art. VIII. § 5. (Memo. ISO Motion at 10.) The Memorandum in Support appears to cite the entire Utah Uniform Trade Secrets Act as a statutory basis for the Search Order as well. (Memo ISO at 4.)

The Complaint alleges that the statutes on which the Search Order relies are constitutionally infirm for failing to provide for notice and a hearing. (Yanaki Complaint ¶ 38.) This allegation is insufficient to ground a federal claim for several reasons. The Complaint purports to establish the statutory authority on which the Search Order is based by quoting the Iomed Memorandum in Support of the Motion for the Search Order, rather than the Search Order itself. While the Search Order does not articulate the legal basis authorizing the state court's ruling, it may not necessarily be assumed that the court adopted Iomed's justification uncritically.

Even if the state court did rely on the statutory and constitutional provisions listed by Iomed in the Memorandum in Support of its Motion, however, Plaintiff's allegations remain insufficient. The procedure outlined in Utah Rule of Civil Procedure 34 *does* provide for service and response, satisfying constitutional requirements for notice and a hearing. Article VIII § 5 of the Utah Constitution and Utah Code Ann. § 78-7-5, on which Iomed also relied in its Memorandum, speak in general terms to the authority of courts to control their processes, and would not, by their nature, be expected to contain provisions providing for notice and a hearing. It is true that the Utah Uniform Trade Secrets Act does not speak explicitly to opportunities for notice and a hearing regarding discovery matters, but neither does the Act authorize the particular variety of discovery process of which Plaintiff complains.

The fact that the statutes and constitutional provisions Iomed identified in its Memorandum do not provide any authority for the particular type of Search Order obtained in this case is central to Plaintiffs' failure to state a claim on which relief can be granted. These statutes, even if they were relied upon by the state court, do not authorize the state court to issue an ex parte search order of the

¶¶ 10, 19.) The Search Order authorized the Salt Lake County Sheriff's office, assisted by Iomed, to execute a search of Yanaki's residence, seize each hard drive found there, and recover any confidential Iomed files in Yanaki's possession. (Search Order ¶ 3.) The Search Order required Iomed to file under seal with the Court the originals seized, and afforded Yanaki and his counsel the opportunity to review these materials before Iomed was to have further access to them. (Search Order ¶¶ 4–5.)

Salt Lake County Sheriff's Deputy Heinz Kopp and Defendant Matkin arrived at the home of Yanaki and Plaintiff Susan Moss at approximately 8:00 on the morning of April 15, 2002, a Monday, and served Moss with a copy of the Search Order.[3] (Complaint ¶ 20.) Moss informed Kopp and Matkin that Yanaki was away from home and that she would not allow them into the home during his absence. Despite Matkin's assertion that "We can come in now, or we can come in later," and Deputy Kopp's comment to the effect that they could kick the door down, Moss refused to allow them to execute the Search Order, and Matkin left to obtain a supplemental order. (Complaint ¶ 22.)

Later on the morning of April 15, Matkin obtained from the judge, ex parte, a writ of assistance captioned "Supplemental Order in Aid of Enforcement," which authorized the use of "reasonable force" to execute the Search Order. (Complaint ¶ 25; Writ of Assistance.) Matkin returned to Plaintiffs' home, and, accompanied by Deputy Kopp and Defendants Mary Crowther (an Iomed employee) and Scott L. Johnson (an employee of Defendant Office Equipment Associates), served the Writ of Assistance on Moss. (Complaint ¶ 31; Memo ISO ¶ 11.) Moss allowed Kopp, Matkin, Crowther, and Johnson to enter her home, where they seized documents and copied Yanaki's computer's hard drive, zip disks, and a compact disk. (Memo ISO ¶ 12.) The materials seized were deposited with the Third District Court. (Memo ISO ¶ 13.)[4] On April 14, 2003, Plaintiffs Yanaki and Moss commenced the instant action by filing separate complaints.[5]

## ANALYSIS

Plaintiffs allege a violation of their right to be free from unreasonable searches and seizures (Yanaki Complaint ¶ 167 *et seq*; Moss Complaint ¶ 167 *et seq.*), as well as

---

sort granted here. Even if the provisions on which Iomed relied were of a sort that would be expected to contain notice and hearing provisions or risk unconstitutionality, Plaintiffs would still have failed to state a claim because those statutes did not authorize the Search Order. The Plaintiff in *Lugar v. Edmondson Oil Company, Inc.* had a § 1983 claim because the statute on which the trial court relied explicitly provided for the procedure of which that Plaintiff complained, and that procedure was unconstitutional. 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Because the statutes and constitutional provisions cited in the Iomed Memorandum and the Complaint do not, explicitly or implicitly, provide the state court with the authority to issue the Search Order, the constitutionality of these provisions is irrelevant and cannot establish a claim under § 1983.

3. Yanaki was in Colorado at the time the Search Order was served and the search executed. (Complaint ¶ 20.) Moss was also served with a summons, a copy of the Search Motion, and the Iomed Memorandum in Support of the Search Motion. (*Id.*)

4. Yanaki's Complaint and Defendants' Memorandum in Support of the Motion to Dismiss offer differing accounts of the circumstances under which the materials seized were placed in the custody of the Third District Court. (Complaint ¶¶ 37–39; Memorandum ISO ¶¶ 12–13.) This dispute is not pertinent to the resolution of the legal issues before the Court.

5. Plaintiffs stipulated to Defendants' Motion to Consolidate the cases filed separately by Moss and Yanaki; the cases were consolidated by order on May 9th, 2003.

deprivations of liberty and property rights without either procedural or substantive due process of law (Yanaki Complaint ¶ 175 *et seq.;* Moss Complaint ¶ 175 *et seq.*).[6] Because they allege these deprivations all occurred under color of state law, Plaintiffs claim a remedy pursuant to 42 U.S.C. § 1983.

To state a cause of action under section 1983:

First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show the defendant acted "under color of law."

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Because the deprivations of which Plaintiffs complain will not give rise to a cause of action under § 1983 if there was no

action taken under color of state law, it may be expedient to analyze the second part of the test first.[7] *See Gilmore v. Salt Lake Community Action Program*, 710 F.2d 632, 637 (10th Cir.1983).

■■■ In order to satisfy the requirement that the deprivation occur under color of state law, the conduct of which a plaintiff complains must be fairly attributable to the State. The United States Supreme Court has identified two aspects to the determination of fair attribution:

First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible ... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

---

**6.** Yanaki also asserts state law claims for invasion of privacy (Yanaki Complaint ¶ 187 *et seq.*); intentional infliction of emotional distress (Yanaki Complaint ¶ 194 *et seq.*); trespass (Yanaki Complaint ¶ 202 *et seq.*); conversion (Yanaki Complaint ¶ 209 *et seq.*); and civil conspiracy (Yanaki Complaint ¶ 216 *et seq.*). The Court's disposition of Plaintiffs' claims under federal law eliminates any need for discussion of these claims.

**7.** With respect to the first element of proof, that Defendant deprived Plaintiff of a right secured by the "Constitution and Laws" of the United States, this case focuses primarily on the Fourth Amendment guarantee that "the people shall be free from unreasonable searches and seizures." Because of the Court's holding in this case that there is a failure to show that Defendants acted under color of law, there is no need to address in detail this aspect of Plaintiff's arguments. Indeed, given that the Fourth Amendment is only directed at unreasonable searches and

seizures by state actors, and not private parties, if the second element of proof ("under color of law") is not met, it would be impossible to meet the first element in any event. Nonetheless, it appears clear that the conduct complained of in this case would be in violation of the Fourth Amendment if state action were involved. The invasion of Plaintiff's home, supported only by an ex parte submission of Plaintiffs' opponents in a civil lawsuit, appears to be precisely the type of unreasonable intrusion into a private dwelling that the Fourth Amendment is designed to prevent. Defendants' protestations to the contrary, an ex parte motion presented to a judge in the course of civil litigation is not the equivalent of a probable cause search warrant affidavit submitted by an independent law enforcement officer. If there was a sufficient basis for finding that Defendants' actions in this case were committed under color of state law, this Court would find that Plaintiffs were deprived of a right secured by the "Constitution and Laws" of the United States.

*Lugar v. Edmondson Oil Company, Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Plaintiffs allege that Defendants' use of state discovery rules to obtain an order from a state court judge permitting the search of their home and the seizure of Yanaki's property satisfies the first part of the test for fair attribution. (Plaintiffs' Consolidated Supplemental Memorandum Re: State Action at 10 *et seq.*) Plaintiff is in error. For the purposes of actions under § 1983, *Lugar* clearly distinguishes between court orders purportedly authorized by unconstitutional statutes and unconstitutional orders purportedly authorized by constitutional statutes. The inappropriate use by private litigants of a constitutional statute or rule does not constitute state action for the purposes of § 1983. *See Lugar* 457 U.S. at 940, 102 S.Ct. 2744. ("That respondents invoked the statute without the grounds to do so could in no way be attributed to a state rule or a state decision . . . a private misuse of a state statute does not describe conduct that can be attributed to the

State.") [8] Under the reasoning articulated in *Lugar,* passing an unconstitutional statute in a state legislature and enforcing it in state courts is action fairly attributable to the state, and can subject private litigants who make use of the statute to liability under § 1983. *See id.* at 940–942, 102 S.Ct. 2744 (private litigant subject to liability under § 1983 for obtaining an *ex parte* order under a state statute subsequently found unconstitutional). The Plaintiffs before this Court have not argued that the Search Order in question was issued pursuant to a constitutionally infirm statute, but rather that the Search Order itself was unconstitutional.

Courts have been extremely reluctant to extend liability under § 1983 to private litigants making use of the constitutionally valid tools provided them by state law:

> We do not think that the "color of law" reference in § 1983 was intended to encompass a case such as this one, where the only infirmities are the excess of the court order itself, subject to immediate

---

8. It may seem at first blush that state action is apparent when the basis for the behavior in question is an order of a state court, but the decisions of the Supreme Court and the Tenth Circuit Court of Appeal cited in this opinion make clear that the mere involvement of a state court or state law enforcement officer in a private matter does not necessarily constitute state action within the meaning of § 1983. The focus of § 1983 is action *by* the state, not action initiated by private citizens, even those which peripherally involve the state. An assault and battery committed by a private citizen on a public sidewalk does not involve state action for § 1983 purposes. Nor does a private act committed by a private citizen in a state court lawsuit constitute state action, even if the act results in a court order that infringes upon another private citizen's rights. This distinction explains *Lugar's* finding of state action where the Plaintiff's challenge was directed at the actions of the Virginia state legislature in passing an unconstitutional statute. But the *Lugar* court was careful to

point out that there would have been no case under § 1983 if the Plaintiff had alleged that his rights had been violated by an improper court order that was based on a constitutional state statute: "While the private misuse of a state statute does not describe conduct that can be attributed to the State, the procedural scheme created by the statute obviously is the product of state action." *Lugar* 457 U.S. at 941, 102 S.Ct. 2744. The focus of § 1983 is not directed at private parties such as the Defendants in this case, who are alleged to have misrepresented facts and otherwise acted inappropriately in obtaining an improper order from a state trial judge. As noted in footnote seven, above, the behavior of the Defendants may have been inadvisable and abusive of Plaintiffs' rights, and may or may not give rise to other legal causes of action, such as perhaps abuse of process, but the Defendants' actions were undisputedly *not* initiated by the state, and therefore pursuant to the precedent referred to in the body of this opinion may not serve as a basis for a claim under § 1983.

modification by a court having jurisdiction over the parties, and subject to the normal processes of appeal.

*Torres v. First State Bank of Sierra County,* 588 F.2d 1322, 1326–7 (10th Cir.1978). *See also Barnard v. Young,* 720 F.2d 1188, 1189 (10th Cir.1983) ("To the extent that plaintiff alleges that state law did not authorize defendant to obtain the records [pursuant to state court order] 'the conduct of which [plaintiff] complained could not be ascribed to any governmental decision.' ") (quoting *Lugar,* 437 U.S. at 940, 102 S.Ct. 2744); *Lindley v. Amoco Production Co.,* 639 F.2d 671 (10th Cir.1981) (citing *Torres* as authority for finding no state action, and thus no cause of action under § 1983, when a court order made pursuant to state discovery rule authorized plaintiff in a civil case to enter defendant's home and seal files located there).

Restricting the availability of § 1983 actions to cases in which there is action fairly attributable to the state provides a principle limiting the variety and number of state court proceedings capable of creating federal causes of action. While not absolutely eliminating the possibility that state court proceedings could form the basis of § 1983 actions in federal court, the Tenth Circuit Court of Appeals has limited § 1983 actions to those exceptional cases in which the state court proceedings may be characterized as a complete nullity, thus preserving the gate-keeping function served by the requirement of state action:

> To hold otherwise would open the door wide to every aggrieved litigant in a state court proceedings [sic], and set the federal courts up as an arbiter of the correctness of every state decision ... [The Fourth Amendment does not] "assure uniformity of decisions or immunity from merely erroneous action."

*Bottone v. Lindsley,* 170 F.2d 705, 707 (10th Cir.1948) (quoting *Snowden v. Hughes,* 321 U.S. 1, 15, 64 S.Ct. 397, 88 L.Ed. 497 (1944) (Frankfurter, J., concurring)).

Because neither the pleadings nor the facts of the case before the Court support an argument that the statute under which the state judge issued the Search Order was unconstitutional or that the state court proceedings of which the Search Order is a part were a complete nullity, Plaintiffs have failed to plead the element of state action requisite to sustain an action under § 1983. With respect to their claims made under federal law, Plaintiffs have therefore failed to state a claim upon which relief can be granted, and dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate.

Because this order disposes of all Plaintiffs' claims involving federal law, pursuant to 28 U.S.C. § 1367(c)(3) the Court declines to exercise its supplemental jurisdiction over Plaintiffs' remaining state law claims.

## CONCLUSION

For the preceding reasons, the Court GRANTS Defendants' 12(b)(6) Motion to Dismiss with prejudice.

**IT IS SO ORDERED.**